[No. 15847. Department One. July 7, 1920.]

FRED J. PESHA, *Appellant*, v. WILLIAM H. PRATT,
*Receiver etc., Respondent.*[1]

CORPORATIONS (73)—STOCKHOLDERS—SERVICES—CONTRACT FOR EM-
PLOYMENT. A written agreement by a corporation to employ a
stockholder while he held the stock, the "stock and position trans-
ferable," fixing no time when the employment was to begin, does
not show an intent to pay wages prior to the time fixed by an oral
contract of the parties, where the primary purpose of the writing
was to aid in the disposal of the stock.

Appeal by plaintiff from a judgment of the superior
court for King county, Smith, J., entered February 25,
1920, in favor of the plaintiff, in an action to foreclose
labor liens, tried to the court. Affirmed.

*Channing M. Coleman,* for appellant.

*Thomas N. Swale* and *Wm. H. Pratt,* for respondent.

MAIN, J.—The purpose of this action was to fore-
close two labor lien claims. The plaintiff performed
the labor covered by one of the claims, and the other
claim had been assigned to him. The total amount
of recovery sought was approximately $900. The
trial before the court without a jury resulted in a
decree allowing $35.32 and directing a foreclosure for
this sum. The plaintiff, being dissatisfied with this
award, prosecutes the appeal. The facts which gave
rise to the controversy may be summarized as follows:

[1]Reported in 191 Pac. 639.

During the month of October, 1918, W. A. Wilcox, Samuel C. Brown, and Fred J. Pesha organized the Wilcox Lumber and Logging Company, a corporation. Wilcox became the president and manager, Pesha the secretary and treasurer, and Brown the vice president. The capital stock of the company was $40,000. Each of the parties put in $1,000 in cash. In addition to this, Brown put in $1,500 worth of sawmill machinery, and Wilcox $14,000 worth of machinery. The purpose of organizing the corporation was to engage in the logging and sawmill business. The parties were first brought together by an advertisement by Brown, which Wilcox answered. Pesha was induced to invest through Brown. After the parties met and talked the matter over, they proceeded to organize the corporation and acquired the amount of stock specified. The balance of the capital stock was not subscribed. Soon after the organization of the corporation, the work of assembling the machinery and the construction of the mill began. At that time it was contemplated that it would take about ninety days to get the mill ready for operation. It developed that it would take a considerably longer time. Pesha, not being entirely satisfied with his investment and the way the construction of the plant was progressing, drew, in his own handwriting, on January 15, 1919, a memorandum and presented it to Wilcox as president of the company for signature, and it was thus signed. Brown added his name to the writing. This writing will be subsequently referred to. From the time the work of construction began, Brown and Pesha worked about the plant, which was completed and ready for operation on or about April 1, 1919. On the 22d of that month, the mill was destroyed by fire. It was operated from some time early in April until the time of its destruction, and Pesha and Brown continued to work therein.

The corporation being in an insolvent condition after the mill was destroyed, a receiver was appointed. Pesha and Brown each filed a notice of claim of lien. The question of fact is whether they were to draw wages from the time the construction work of the mill was entered upon or from the time it was completed and in operation. Upon this question, the testimony is conflicting. The appellant claims that they were to be allowed wages from the time they first began work, but that they were not to be paid until the mill was in operation. The respondent's contention is that the understanding between the parties was that no one of them should be allowed any compensation for any work done until the mill was completed and in operation.

Without reviewing the evidence in detail, it may be said that we think the holding of the trial court that it was the understanding of the parties that no wages should be allowed until the mill was completed and in operation must be sustained. After a careful consideration of the record, we are in entire accord with the views of the trial judge expressed orally at the conclusion of the case, as shown in the following excerpt from his opinion:

"I am well satisfied that Mr. Pesha and Mr. Brown originally started out with the intention of contributing without compensation their services until the mill was in operation, anticipating it would be for ninety days, and it lasted too long and they got tired of it. And when they finally wound up and the business collapsed, they got together and thought it would be a good plan to put in a claim for wages, which in my judgment they never anticipated getting when they started out. There is no showing that either party ever demanded wages, and they did not have their names in the books as employees. But when the mill was completed, then, in accordance with the understanding, their names went on the pay roll for a brief period, and they were entitled to wages."

It is claimed, however, that the writing above referred to indicates a contrary intention. It recites:

"Wilcox Logging & Lumber Co. does hereby agree to give F. J. Pesha steady work at not less than five dollars per day at said company's mill, in consideration of said F. J. Pesha being a stockholder in said company, and to be employed for duration of said F. J. Pesha and holding stock in said Wilcox Logging & Lumber Co., said stock and position transferable."

This memorandum, as already stated, was prepared by Pesha and signed Wilcox Logging & Lumber Company, by Wilcox and by Brown. Pesha, having become dissatisfied, was desirous of getting his money out of the corporation, and apparently conceived the idea that, if he had some memorandum showing that the stock and position were transferable, it would aid him in this respect. The memorandum was made approximately three months after Pesha and Brown began work on the construction of the mill, and yet contains no recital covering the matter of wages prior to that time. It fixes no time when the employment covered by it was to be begun, but recites that the employment was for the duration of the holding of the stock and that the stock and position were transferable. The reason for writing the memorandum and causing it to be signed, as stated by Pesha in his testimony, is as follows:

"I wrote the contract and took it to Mr. Wilcox and asked him to sign it and I asked him if that was all right. And when I presented it to him he said what is the idea. It is understood, he said, is it not, that you and Brown are going to get steady work? I said, yes, but in case I should want to dispose of my stock I would have a position to transfer with it."

As we view the writing, it is not inconsistent with the view that wages were not to be paid until the mill was completed and in operation.

There is some argument in the briefs over the question of the burden of proof. This, however, is not very material in the present case. Under the issues made by pleadings, the burden was upon the appellant to establish all the elements of the action. If it be assumed, *arguendo*, that he did not carry this entire burden, the result would be the same.

The evidence amply sustains the holding of the trial court. The judgment will be affirmed.

HOLCOMB, C. J., PARKER, MACKINTOSH, and MITCHELL, JJ., concur.